IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ANGELA B. AND TRUMAINE S., | § | |
| AS PARENTS/GUARDIANS/NEXT | § | |
| FRIENDS OF T.S., AN INDIVIDUAL | § | |
| WITH A DISABILITY, | § | Civil Action No. 3:20-CV-0188-D |
| | § | (Consolidated with Civil Action No. |
| Plaintiffs, | § | 3:20-CV-0207-D) |
| | § | |
| VS. | § | |
| | § | |
| DALLAS INDEPENDENT SCHOOL | § | |
| DISTRICT, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

In this consolidated action arising from a denial of special education services and an appeal of a due process hearing under the Individuals with Disabilities Education Act ("IDEA"), defendant Dallas Independent School District ("DISD") moves under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) to dismiss the claims of plaintiffs Angela B. and Trumaine S., as parents/guardians/next friends of T.S., a minor student with a disability, brought under § 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794, the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, and 42 U.S.C. § 1983. For the reasons explained, the court grants the motion and dismisses these claims without prejudice.

I

T.S. is an African-American second-grade student who experiences dyslexia, Attention Deficit/Hyperactivity Disorder ("ADHD"), and related learning problems. T.S. attended a DISD school as a first-grade student during the 2018-2019 school year. In October 2018 plaintiffs requested in writing that DISD complete a Full and Individual Evaluation ("FIE") to determine if T.S. qualified for special education services under the IDEA. They also asked DISD to evaluate him for speech, language, and potential occupational therapy needs. In November 2018 DISD provided plaintiffs a proposed special education evaluation form, and plaintiffs gave written consent to the FIE. Plaintiffs agreed that DISD would evaluate T.S. for speech, occupational therapy, and dyslexia.

In January 2019 plaintiffs arranged for a private evaluation of T.S. at Scottish Rite Hospital ("Scottish Rite"). Scottish Rite determined that T.S. had "high average intelligence and diagnosed him with dyslexia, handwriting problem[s], and [ADHD], Combined Presentation." Compl. 5. On January 30, 2019, while the FIE was pending, DISD qualified T.S. as a student eligible for § 504 services based largely on the Scottish Rite evaluation. His disabilities were identified as "ADHD, Dyslexia[,] and a Handwriting Problem." *Id.* DISD then began the FIE process.

In February 2019 a DISD evaluator (who was Caucasian) informed plaintiffs that she suspected that T.S. might have autism. When informed of this potential disability, plaintiffs were concerned that DISD evaluators "did not take into account . . . T.S.'s African-American culture and lifestyle, such as not making eye contact with adults as a sign of respect." *Id.* at

- 2 -

6.  In early February 2019 plaintiffs requested that DISD "hold off" on testing for autism. *Id.*  DISD responded that, without the opportunity to evaluate for all suspected areas of disability, including autism, DISD would not complete the evaluation.  On February 8, 2019 DISD sent T.S.'s mother a revocation of consent form, which she never returned.

On February 11, 2019 T.S.'s mother filed a complaint with the Texas Education Agency ("TEA").  After TEA denied the initial complaint because it was filed before the FIE due date, T.S.'s mother filed another complaint on February 22, 2019.  She complained that DISD "had not completed the agreed-upon [FIE] of T.S. to determine if he qualified for special education services." *Id.*  On April 17, 2019 TEA issued a report that found that DISD had violated the IDEA by failing to complete an FIE of T.S. within the regulatory timelines required by the IDEA and the Texas Administrative Code.  TEA directed DISD to convene an Admission, Review, and Dismissal ("ARD") meeting to determine if T.S. was eligible for special education services and to determine the appropriate level of compensatory services T.S. should receive to remedy the violation.  TEA also ordered DISD to complete staff training, correct policies regarding the violation, and submit a timeline to complete this corrective action by May 17, 2019.

On May 13, 2019 DISD filed a request for a special education due process hearing that would override TEA's order and permit DISD to complete an FIE that, without parental consent, would include autism.  TEA appointed a special education hearing officer to hear the case.  A prehearing conference was held on May 28, 2019, and the hearing officer gave plaintiffs an opportunity to file a written response to DISD's due process hearing request.

On June 24, 2019 plaintiffs, then unrepresented by counsel, filed their position statement. They contended that, by not completing the agreed FIE, DISD had denied T.S. a free appropriate public education ("FAPE"), and they requested that DISD be required to comply with TEA's order and "provide compensatory services and compensatory time[.]"  D. App. 7.  DISD then requested an additional prehearing conference to discuss plaintiffs' position on the ground that it "appeared to [DISD] that the parent[s] [were] asserting a counter-claim for the due process hearing."  D. Br. 5.

Another prehearing conference was held on July 2, 2019.  DISD argued that plaintiffs were asserting counterclaims and that they should be required to exhaust the IDEA's resolution process as to these new claims.  Now represented by counsel, plaintiffs maintained that they had not asserted a counterclaim or filed a request for a due process hearing, but that the hearing officer had the right to award appropriate relief.  The hearing officer requested supplemental briefing on the issue.  In the briefing, DISD

> asserted that the facts alleged by the Parents in the June 24 filing—that [DISD] has failed to provide T.S. with [a] FAPE; that [DISD] failed to timely complete a FIE in the alleged suspected areas of Specific Learning Disability/dyslexia, speech and occupational therapy; that [DISD] failed to comply with a TEA correction action plan; that [DISD] failed to offer or provide appropriate compensatory services; and that [DISD] failed to provide training to staff and/or revise its policies—all supported the conclusion that the Parents had filed a counterclaim in this matter.

*Id.* at 5-6.  Plaintiffs again responded that they "ha[d] not raised a counterclaim," and they reiterated that DISD, not they, filed the due process hearing.  *Id.* at 6.  But plaintiffs

maintained that "[i]t would be a fair and equitable remedy to also order the DISD to bear the costs of at least the fall term of [T.S.'s] [private school] because of DISD's failure to properly and timely complete [T.S.'s] initial FIE."  Ps. App. 20.

On July 18, 2019 the hearing officer ruled that DISD's due process hearing request presented a single legal issue—"whether [DISD] may proceed with a[n] [FIE] of [T.S.] in all areas of suspected disability, to include autism, without parental consent," D. App. 67, and that the plaintiffs' June 24 position statement "did not present additional legal claims[.]" *Id.* at 68.  The three-day due process hearing occurred on July 31, August 12, and September 12, 2019.  In August 2019 plaintiffs notified DISD that T.S. would attend private school instead of return to DISD.

On November 1, 2019 the hearing officer denied DISD's request to override parental consent.  She held that DISD had failed to evaluate T.S. within a reasonable time after it had notice of behavior likely to indicate a disability, and had failed to complete T.S.'s FIE within the timelines established by the IDEA and its implementing state and federal regulations. The hearing officer ordered DISD to complete the FIE and to convene an ARD to consider it.

Plaintiffs filed suit in this court in January 2020, seeking attorney's fees under the IDEA as a prevailing party at the due process hearing.  They also assert claims under § 504 of the Rehabilitation Act and the ADA seeking private school tuition reimbursement, expert witness fees, and attorneys' fees, and under § 1983 for DISD's alleged interference with their parental right to control T.S.'s upbringing and education.  DISD then filed in this court an

appeal of the hearing officer's decision.  The cases have since been consolidated, and DISD moves to dismiss plaintiffs' non-IDEA claims, i.e., their claims under § 504 of the Rehabilitation Act, the ADA, and § 1983.

## II

The court turns first to DISD's Rule 12(b)(1) motion to dismiss plaintiffs' non-IDEA claims.[1]

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998).  The court "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).  If subject matter jurisdiction is lacking, the court must dismiss the suit. *See Stockman*, 138 F.3d at 151.

A party can challenge subject matter jurisdiction by making a facial attack or a factual attack. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).  A party can make a factual attack on subject matter jurisdiction by submitting evidence, such as affidavits or testimony. *See id.*; *IBEW-NECA Sw. Health & Benefit Fund v. Winstel*, 2006 WL 954010, at *1 (N.D. Tex. Apr. 12, 2006) (Fitzwater, J.) (citing *Paterson*, 644 F.2d at 523).  If the movant provides evidence factually attacking subject matter jurisdiction, the nonmovant must

---

[1]*See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) ("When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits.").

submit evidence and prove by a preponderance of the evidence that the court has jurisdiction. *See Paterson*, 644 F.2d at 523.

Here, DISD mounts a factual attack, based on evidence such as the hearing officer's orders and hearing transcripts, asserting that the court lacks subject matter jurisdiction as a result of plaintiffs' failure to exhaust administrative remedies under the IDEA. Thus plaintiffs must show by a preponderance of the evidence that they either *did* exhaust administrative remedies under the IDEA or that exhaustion was not required.

III

A

The IDEA provides "[a]n opportunity for any party to present a complaint with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a [FAPE] to such child." 20 U.S.C. § 1415(b)(6)(A). In Texas, a party making such a complaint is entitled to a due process hearing conducted by the TEA. *See* 20 U.S.C. § 1415(f)(1)(A); 19 Tex. Admin. Code § 89.1151(b) (implementing one-tier review system under IDEA). A party "aggrieved by the findings" of the TEA may bring an action in state or federal court "with respect to the complaint presented pursuant to this section[.]" § 1415(i)(2)(A). Section 1415(i)(2)(A) thus limits a party's right of action under the IDEA to issues presented at the due process hearing. *See Blackmon ex rel. Blackmon v. Springfield R-XII Sch. Dist.*, 198 F.3d 648, 655-56 (8th Cir. 1999).

- 7 -

The IDEA further provides:

> [n]othing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the [ADA], title V of the Rehabilitation Act of 1973, or other Federal laws . . ., except that before the filing of a civil action under such laws seeking relief that is also available under [the IDEA], the [IDEA] procedures . . . shall be exhausted to the same extent as would be required had the action been brought under [the IDEA itself].

20 U.S.C. § 1415(l).  Thus "a plaintiff may invoke any federal law to support a disabled student's claim for an adequate education; the plaintiff just must first exhaust under the IDEA process[.]"  *McMillen v. New Caney Indep. Sch. Dist.*, 939 F.3d 640, 644 (5th Cir. 2019).  In other words, "[t]he exhaustion requirement is not limited to claims brought under the IDEA."  *Hooker v. Dall. Indep. Sch. Dist.*, 2010 WL 4025877, at *6 (N.D. Tex. Oct. 13, 2010) (Fitzwater, C.J.).

A plaintiff's non-IDEA claims are subject to IDEA exhaustion when "the plaintiff seeks to remedy the deprivation of the [FAPE] that the IDEA guarantees."  *McMillen*, 939 F.3d at 645 (citing *Fry v. Napoleon Cmty. Schs.*, 580 U.S. ___, 137 S. Ct. 743, 750 (2017)).  The court looks to the substance or the "gravamen" of the complaint, not its labels and terms, to determine whether the non-IDEA claims seek to remedy the denial of a FAPE.  *Id.*  Certain "clue[s]" may assist the court in this determination.  *Fry*, 137 S.Ct. at 756.  For example, the "history of the proceedings," such as a plaintiff's "previously invok[ing] the IDEA's formal procedures to handle the dispute," is "strong evidence that the substance of a plaintiff's claim concerns the denial of a FAPE, even if the complaint never explicitly uses that term."  *Id.* at

757.  Likewise, a plaintiff's use of "IDEA lingo" throughout the complaint provides another indication that the gravamen of a suit is the denial of a FAPE, thereby bringing the exhaustion requirement into play.  *McMillen*, 939 F.3d at 645.

When it is unclear whether the complaint "concerns the denial of a FAPE, or instead addresses disability-based discrimination," another "clue" may come from asking two hypothetical questions:

> First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school—say, a public theater or library?  And second, could an *adult* at the school—say, an employee or visitor—have pressed essentially the same grievance?  When the answer to those questions is yes, a complaint that does not expressly allege the denial of a FAPE is also unlikely to be truly about that subject; after all, in those other situations there is no FAPE obligation and yet the same basic suit could go forward.  But when the answer is no, then the complaint probably does concern a FAPE, even if it does not explicitly say so; for the FAPE requirement is all that explains why only a child in the school setting (not an adult in that setting or a child in some other) has a viable claim.

*Fry*, 137 S.Ct. at 756.  In sum, because the IDEA achieves its goal of ensuring a FAPE by "providing instruction and related services to the child's unique needs," a complaint that "a school did not adopt a plan individualized to the student's needs sound[s] in the IDEA." *McMillen*, 939 F.3d at 645.

## B

DISD contends that plaintiffs' claims under § 504 of the Rehabilitation Act, the ADA, and § 1983 are subject to the IDEA's exhaustion requirement because "both the substance

and language of the Complaint reveal that the Plaintiffs are challenging the denial of a [FAPE]."  D. Br. 10.  Relying on *Doe v. Dallas Independent School District*, 941 F.3d 224 (5th Cir. 2019), plaintiffs respond that they need not exhaust certain non-IDEA claims because "when a federal statute is not specifically designed to protect a student—and any student can be protected by it—then exhaustion is not required."  Ps. Resp. 12.  And they maintain that, to the extent exhaustion was required, they "exhausted twice" by filing a state complaint and participating in and prevailing at the due process hearing.  *Id.* at 9.  DISD replies that all of plaintiffs non-IDEA claims are "education claims based on a denial of [a FAPE]" and that plaintiffs failed to exhaust these claims because they refused to raise them at the due process hearing.  D. Reply 1.

C

1

The court concludes that all of plaintiffs' non-IDEA claims relate to the denial of a FAPE and are therefore subject to the IDEA's exhaustion requirements.  In their allegations supporting their "504/ADA" cause of action, plaintiffs assert that "[t]here is no dispute that [D]ISD denied T.S. access to educational services in the nature of correct dyslexia intervention that he needed as a result of his dyslexia while fully aware that he had dyslexia during the 2019-2020 school year."  Compl. 14.  Thus plaintiffs expressly maintain that DISD failed "adopt a plan individualized to the student's needs"—an allegation that "sound[s] in the IDEA."  *McMillen*, 939 F.3d at 645.  Plaintiffs also initiated the IDEA's administrative procedures by filing the initial TEA complaint, which is "strong evidence"

- 10 -

that plaintiffs seek to remedy the denial of a FAPE.  *Fry*, 137 S.Ct. at 757.  Moreover, plaintiffs use "IDEA lingo" throughout the complaint.  Plaintiffs refer to DISD's failure to complete an "FIE," TEA's order to "convene an ARD to consider it," and their request for an "ARD/IEP meeting."  Compl. 5, 6, 7, 8, 9.  "[T]hese examples provide a strong flavor of the allegations that are laden with IDEA terminology," and suggest that the focus of the complaint is the failure to provide a FAPE.  *McMillen*, 939 F.3d at 645 (noting that use of terms like IEP, ARD, MDR, and other IDEA language is an indicator that non-IDEA claims arise from denial of a FAPE).  Moreover, it is clear that the "§ 504 and ADA claims could not be brought if the alleged conduct had happened outside school," because the claims are directly related to a denial of *educational* services.  *Washington ex rel. J.W. v. Katy Indep. Sch. Dist.*, 390 F.Supp.3d 822, 835 (S.D. Tex. 2019) (Rosenthal, C.J.) (citing *Fry*, 137 S.Ct. at 756).

   Plaintiffs' § 1983 claim is likewise subject to the IDEA's exhaustion requirement because it is predicated on the denial of a FAPE for T.S.  *See Oliver v. Dall. Indep. Sch. Dist.*, 2004 WL 1800878, at *2 (N.D. Tex. Aug. 11, 2004) (Godbey, J.) ("Courts interpreting [the IDEA] have uniformly held that parents are precluded from seeking relief in state or federal court under the IDEA or [§] 1983 until they have exhausted their administrative remedies.").[2]  This is especially the case here where plaintiffs allege that DISD interfered

---

[2]Courts that have since held that exhaustion of § 1983 claims is not required have only done so when the gravamen of the complaint does not involve the denial of a FAPE.  *See, e.g., Tristan v. Socorro Indep. Sch. Dist.*, 902 F.Supp.2d 870, 876 (W.D. Tex. 2012) ("[Plaintiffs' §] 1983 claims are not subject to exhaustion because they arise from an incident

- 11 -

with their "constitutional right to bring up T.S." by refusing to have him "evaluated for special education." Compl. 16. Because the means by which DISD allegedly interfered with their parental rights is based on DISD's failure to evaluate T.S. and provide him appropriate educational services, plaintiffs' § 1983 claim "overlap[s] with the IDEA claim[]," and therefore "must be administratively exhausted." *Reyes v. Manor Indep. Sch. Dist.*, 850 F.3d 251, 257 (5th Cir. 2017).[3]

2

Plaintiffs' contentions notwithstanding, the court holds that they did not exhaust their administrative remedies as to their non-IDEA claims before bringing this lawsuit. Plaintiffs contend that there are "two ways to exhaust administrative remedies": by filing a TEA complaint resulting in a complaint order, or participating in a due process hearing. Ps. Resp. 2. The court disagrees. "Exhaustion requires more than pleading a claim" in a state complaint or in prehearing briefing; "it requires 'findings and decision' by the administrative

---

unrelated to the provision of educational services, and seek relief for non-educational injuries which cannot be remedied through the IDEA."). Because plaintiffs' § 1983 claim here arises from a denial of educational services, they must exhaust this claim through IDEA's administrative procedures.

[3]Plaintiffs' reliance on *Doe* is misplaced. In *Doe* the Fifth Circuit held that the plaintiff's claims primarily pertained to "allegations that the school was deliberately indifferent to [plaintiff's] sexual abuse," and, for that reason, "the gravamen of the complaint [was] not about the denial of a FAPE and . . . the IDEA's exhaustion requirement d[id] not apply." *Doe*, 941 F.3d at 228. Because the gravamen of plaintiffs' claims in this case is the denial of educational services, *Doe* is inapposite. *See id.* at 227 n.1 (distinguishing *McMillen*, 939 F.3d at 640, which required IDEA exhaustion, because *McMillen* involved the denial of a FAPE).

body" as to the claims plaintiffs seek to assert in federal court. *Reyes*, 850 F.3d at 256 (quoting 20 U.S.C. § 1415(g)); *see also Blackmon*, 198 F.3d at 655 ("[U]nder well-established judicial interpretations of the IDEA, [plaintiff] had an obligation to exhaust her administrative remedies with regard to the issues upon which she seeks judicial review."). Thus filing a TEA complaint and participating in a due process hearing is insufficient to exhaust administrative remedies where plaintiffs fail to "address [such claims] in [their] prehearing request for relief or otherwise obtain any decision on them from the hearing officer." *Reyes*, 850 F.3d at 256; *see also Hooker*, 2010 WL 4025877, at *5 (holding that parents failed to exhaust claims not addressed at due process hearing).

Here, plaintiffs made no mention of a § 504, ADA, or § 1983 claim in their state complaint, preliminary hearings, prehearing briefing, or at the due process hearing itself, nor do they point to any allegations made in any of the preceding documents that would give rise to such claims. Although plaintiffs did request in their prehearing briefing an equitable remedy in the form of private school tuition reimbursement, it is not clear how a request for an equitable remedy could be construed as an attempt to exhaust a § 504 or ADA claim. Moreover, plaintiffs concede that although the hearing officer's decision noted that T.S. now attends private school at his parents' expense, the hearing officer "did not rule on [their] request for relief]." Ps. Resp. 11. Having failed to "address them in [their] prehearing request for relief[,] or otherwise obtain any decision on them from the hearing officer," plaintiffs failed to exhaust administrative remedies as to any of their non-IDEA claims.

- 13 -

*Reyes*, 850 F.3d at 256.[4]

IV

The court turns now to plaintiffs' contention that exhaustion was excused.

A

Because the court has concluded that plaintiffs claims are subject to the IDEA's exhaustion requirements, "the only way [p]laintiffs' claims can survive is if [they] can show that the exhaustion requirement is excused because it would be futile or inadequate." *M.L. v. Frisco Indep. Sch. Dist.*, 2010 WL 3430696, at *3 (E.D. Tex. June 15, 2010), *rec. adopted*, 2010 WL 3430788 (E.D. Tex. Aug. 31, 2010), *aff'd*, 451 Fed. Appx. 424 (5th Cir. 2011). Exhaustion of administrative remedies may be excused as futile where there is a "systematic

_____

[4]Plaintiffs also attempt to draw a distinction between remedies and claims, but this does not salvage their § 504 and ADA claims. They contend that because they requested the equitable remedy for private school tuition from the hearing officer, "[p]laintiffs are thus free to ask this Court to order that remedy" via § 504 and the ADA. Ps. Resp. 10. At least one court has held that the mere request for compensatory damages in prehearing briefing may be sufficient to exhaust even if the hearing officer did not rule on such a request. *See William V. v. Copperas Cove Indep. Sch. Dist.*, 2018 WL 8244840, at *8 (W.D. Tex. Mar. 15, 2018) (holding that because plaintiffs raised a request for relief supported by exhibits during the administrative hearing process, "those claims were sufficiently brought forth during the administrative hearing"). Notably, however, the plaintiffs in that case requested such compensatory relief as a "subset of [their] IDEA claim, not a separate claim overlapping the IDEA claims such as the [§ 504] Rehabilitation Act claims as in *Reyes*." *Id.* Although it still unclear whether there is a distinction between "the exhaustion requirement for relief as a subset of an IDEA claim" and "the requirement for exhausting overlapping claims (e.g., ADA or Rehabilitation Act claims)," *id.* at *8 n.7, the court need not address the question here. *Reyes* controls. Rather than seeking relief as a subset of their IDEA claim, plaintiffs in this case have brought an overlapping, unexhausted claim under § 504 and the ADA seeking reimbursement. Plaintiffs have failed to exhaust because they have failed to plead this claim, seek relief under this claim in any prehearing request for relief, or obtain a ruling on the claim from the hearing officer. *See Reyes*, 850 F.3d at 256.

violation" or a "hearing officer would have been powerless to correct the alleged IDEA violation[.]"  *Papania-Jones v. Dupree*, 275 Fed. Appx. 301, 304 (5th Cir. 2008) (per curiam).  "[Plaintiffs] bear[] the burden of proving that administrative review would be futile or inadequate."  *Id.* at 303 (citing *Gardner v. Sch. Bd. Caddo Parish*, 958 F.2d 108, 111-12 (5th Cir. 1992)).

B

Plaintiffs contend that "[e]xhaustion of an administrative remedy is only a precondition to suit and not a jurisdictional prerequisite."  Ps. Resp. 9.  For this reason, they maintain that they were not required to exhaust their non-IDEA claims.  Plaintiffs also maintain that they have a "right to a jury trial pursuant to [§] 504 and the ADA" and that exhaustion would therefore be futile because they have demanded a jury trial and an "administrative hearing officer lacks any authority to convene a jury trial."  *Id.* at 8.  Moreover, they posit that "[s]pecial education hearing officers in Texas have very limited jurisdiction over IDEA claims—not [§] 504 and ADA claims or 42 U.S.C. § 1983 claims," and therefore presenting such claims before the hearing officer would have been futile because they would likely have been dismissed.  *Id.* at 10.  Relying on a Ninth Circuit case, *Christopher S. v. Stanislaus County Office of Education*, 384 F.3d 1205 (9th Cir. 2004), plaintiffs also appear to assert that a state complaint may be sufficient to exhaust where they allege a pattern or practice of violations incapable of being remedied by the hearing officer.

C

The court holds that exhaustion is not excused in this case because plaintiffs have not shown that exhaustion would be futile or otherwise inadequate.

1

As a preliminary matter, the court notes that there is some question whether the IDEA's exhaustion requirement is jurisdictional.[5]   Nevertheless, the Fifth Circuit has previously held that "a complaint based on [the IDEA] is not a justiciable controversy until the plaintiff has exhausted his administrative remedies," *Gardner*, 958 F.2d at 112, and has recently affirmed a dismissal on exhaustion grounds, holding that "[b]ecause [the plaintiff] did not first seek relief through the IDEA administrative process, this lawsuit was properly

---

[5]This court has previously noted "that the Supreme Court has in recent years indicated that 'claims-processing' rules should not be considered jurisdictional absent clear legislative intent." *Hooker*, 2010 WL 4025877, at \*6 (collecting Supreme Court cases). And the Fifth Circuit, in an opinion that has been vacated, noted that the circuits "are split" on whether "the IDEA considers [exhaustion] jurisdictional," but it "declined to take sides in this debate." *Stewart v. Waco Indep. Sch. Dist.*, 711 F.3d 513, 528 (5th Cir. 2013) (explaining that the Second Circuit has held that IDEA exhaustion is jurisdictional, but the Seventh, Ninth, and Eleventh Circuits have held otherwise), *opinion vacated and superseded on reh'g,* 599 Fed. Appx. 534 (5th Cir. 2013). Nevertheless, as explained, the Fifth Circuit has continued to affirm dismissals based on failure to exhaust. *See, e.g., McMillen*, 939 F.3d at 648; *M.L. v. Frisco Indep. Sch. Dist.*, 451 Fed. Appx. 424, 426 (5th Cir. 2011) (per curiam) ("The obligation to exhaust the administrative process before filing a suit in federal court arises from the IDEA itself."). Moreover, because "[e]xhaustion serves vital interests, many of which [may be] thwarted by the premature filing of . . . litigation," "as a matter of district court discretion, there [may be] no obligation to allow the suit to continue even were exhaustion not jurisdictional." *M.L.*, 451 Fed. Appx. at 427. Thus whether failure to exhaust IDEA's administrative remedies deprives the court of subject matter jurisdiction or merely provides the court with discretion to dismiss, the court concludes that dismissal in this case is proper.

- 16 -

dismissed." *McMillen*, 939 F.3d at 648.  Moreover, "[w]ithin this district, the IDEA's exhaustion requirement has been interpreted as jurisdictional." *Reed v. Kerens Indep. Sch. Dist.*, 2017 WL 2463275, at *5 (N.D. Tex. June 6, 2017) (Ramirez, J.) (collecting cases); *see also Clinton v. Dall. Indep. Sch. Dist.*, 2019 WL 1411474, at *3 n.3 (N.D. Tex. Mar. 27, 2019) (Scholer, J.) (citing *Hooker*, 2010 WL 4025877, at *6) ("Failure to exhaust administrative remedies deprives the courts of subject-matter jurisdiction.").  In keeping with this precedent, the court continues to hold that failure to exhaust IDEA's administrative remedies or demonstrate futility warrants dismissal.  *See McMillen*, 939 F.3d at 648; *see also Hooker*, 2010 WL 4025877, at *6.

2

Where non-IDEA claims involve the denial of a FAPE, the right to a jury trial does not excuse the obligation to exhaust under the IDEA.  *Cf., e.g., Amerson v. Epps*, 705 Fed. Appx. 331, 333 (5th Cir. 2017) (per curiam) (holding that right to jury trial is not violated where court disposes of claims based on plaintiff's failure to exhaust equal protection claims).  Indeed, the Fifth Circuit has held that where plaintiffs fail to exhaust administrative remedies before filing suit and the court disposes of the underlying claims on those grounds, the demand for a jury trial is "moot."  *Id.*  This is because "[t]he seventh amendment 'does not prescribe at what stage of an action a trial by jury must, if demanded, be had, or what conditions may be imposed upon the demand of such a trial, consistently with preserving the right to it.'"  *Woods v. Holy Cross Hosp.*, 591 F.2d 1164, 1178 (5th Cir. 1979) (quoting *Capital Traction Co. v. Hof*, 174 U.S. 1, 23 (1899)).  Thus "[a]lthough courts are generally

opposed to any burden being placed on the rights of aggrieved persons to enter the courts[,] there may be reasonable restrictions prescribed by law," such as "pursuit of certain administrative relief[.]" *Id.* at 1179. Such a reasonable restriction exists here. "The obligation to exhaust the administrative process before filing a suit in federal court arises from the IDEA itself," and plaintiffs' jury trial demand does not excuse this obligation. *M.L.*, 451 Fed. Appx. at 426.

3

A hearing officer's lack of jurisdiction over non-IDEA claims likewise does not excuse exhaustion. *See Wood v. Katy Indep. Sch. Dist.*, 2009 WL 2485967, at *3 (S.D. Tex. Aug. 6, 2009) (rejecting argument that "since the hearing officer dismissed their 'non-IDEA claims,' they were unable to exhaust their administrative remedies concerning those issues," and dismissing non-IDEA claims that were not exhausted); *see also Washington*, 390 F.Supp.3d at 834-35 (acknowledging that hearing officer dismissed non-IDEA claims for want of jurisdiction and holding that those claims that overlapped with the IDEA were nevertheless subject to exhaustion requirement). A hearing officer's jurisdiction is limited to issues involving matters related to the identification, evaluation, and educational placement of students, as well as the provision of a FAPE under the IDEA. *See* 34 C.F.R. § 300.507(a); 19 Tex. Admin. Code §§ 89.1151 (a)-(b); 89.1170 (a). Nevertheless, as one court has explained, "[e]ven if a[n] . . . IDEA hearing officer does not have jurisdiction over [a non-IDEA] *claim*," plaintiffs must, at the very least, raise "*allegations* related to [the] claim . . . before the IDEA hearing officer to the extent that they 'relate unmistakably to the

evaluation and educational placement of [the student].'"   *S.S. ex rel. Street v. District of Columbia.*, 71 F.Supp.3d 1, 6 (D.D.C. 2014) (quoting *M.T.V. v. DeKalb Cty. Sch. Dist.*, 446 F.3d 1153, 1159 (11th Cir. 2006)).   Were the court to hold otherwise, exhaustion of all non-IDEA claims involving a denial of a FAPE would be excused in contravention of the statute's requirement that such claims "be exhausted to the same extent as would be required had the action been brought under [the IDEA itself]."   20 U.S.C. § 1415(l).

Here, as the court has explained, *see supra* § III(C)(2), plaintiffs do not point to any allegations made before the hearing officer that support any of their non-IDEA claims.   They expressly disclaimed any counterclaims and contended in their prehearing briefing that "seek[ing] the remedy that the TEA . . . already ordered [D]ISD to do does not raise a new claim."   Ps. App. 19.   Plaintiffs did not seek any finding or ruling as to any alleged denial of a FAPE, and instead merely requested an "equitable remedy to also order the DISD to bear the costs of at least the fall term of [private school]" due to the delay of T.S.'s initial FIE.   Ps. App. 20.   The hearing officer in fact summarized plaintiffs' legal position as "object[ing] to testing in the area of autism" and seeking an "order directing [DISD] to finalize testing in areas where the parents have already consented[.]"   Ps. App. 23.   The court cannot conclude from these allegations and the hearing officer's findings and conclusions that plaintiffs asserted before the hearing officer any allegations supportive of a discrimination claim under § 504 or the ADA, or a violation of their constitutional rights under § 1983.   *Cf., e.g., D.A. ex rel. Latasha A. v. Hous. Indep. Sch. Dist.*, 629 F.3d 450, 455 (5th Cir. 2010) (holding in Rule 12(b)(6) context that where only violation found was that "school violated IDEA by

- 19 -

failing to test D.A. for special education needs in October 2007," plaintiff could not "recharacterize" the district's actions as "discriminatory violations of § 504 or ADA"). Having failed to place any such allegations before the hearing officer, plaintiffs cannot bypass exhaustion by now asserting that the hearing officer lacked jurisdiction to hear their non-IDEA claims.

4

To the extent that plaintiffs contend that their challenge of DISD's "two illegal policies about evaluating students," Compl. 6, excuses exhaustion, the court disagrees. The Fifth Circuit has held that exhaustion may be excused where a plaintiff challenges "a *systematic* violation . . . that a hearing officer would have been powerless to correct . . . had they requested a due process hearing" or demonstrates that a "settled state policy . . . could not be addressed through the IDEA's administrative remedies." *Papania-Jones*, 275 Fed. Appx. at 304. Plaintiffs assert that DISD maintained a "pattern and practice" of refusing to complete special education evaluations requested by parents "if the parent refused to allow [DISD] to evaluate for any area of disability it wanted," and a pattern and practice of "identifying African American boys more frequently with autism than with dyslexia." Compl. 15. But plaintiffs' "complaint does not explain how [their] case could not be remedied by local or administrative agencies[.]" *Reed*, 2017 WL 2463275, at *6.

Indeed, TEA found that DISD "does not always complete students' [FIEs] within timelines" required by law and ordered corrective actions not only for "the student subject to this complaint," that is, T.S., but also for "all students with disabilities in [DISD]." Ps.

App. 6, 7. TEA explicitly ordered DISD to "review its policies and related guidelines pertaining to the noncompliance cited in this report to determine if revision is necessary to prevent the noncompliance from reoccurring." *Id.* at 7. Because the record demonstrates that the administrative process was capable of addressing alleged illegal policies had they been asserted by the plaintiffs in the complaint or at the due process hearing, the court holds that exhaustion was not excused.[6] *See, e.g., Mrs. M v. Bridgeport Bd. of Educ.*, 96 F.Supp.2d 124, 130-31 (D. Conn. 2000) (holding that a "pattern and practice of illegally over-identifying minority school children as mentally retarded" was "subject to review by the . . . hearing officers on a case-by-case basis" and therefore not "incapable of being remedied through the available administrative process[.]"); *see also Grieco v. N.J. Dep't of Educ.*, 2007 WL 1876498, at \*9 (D.N.J. June 27, 2007) (holding that "framing a complaint . . . as a challenge to a general policy does not automatically convert the case into the kind of systematic violation that renders the exhaustion requirement inadequate or futile.").

---

[6]The Ninth Circuit's holding is *Christopher S.* does not assist plaintiffs here. In *Christopher S.* the plaintiffs explicitly argued that "they were not challenging their individual identification, evaluation, educational placement, or provision of a FAPE." *Christopher S.*, 384 F.3d at 1210. Instead, they challenged the school district's admitted and settled "across-the-board administrative decision" to shorten the school day for all autistic students, "a decision that [did not] result[] from any Student's IEP process." *Id.* Because the plaintiffs in that case challenged a blanket policy unrelated to the development of individualized IEPs, the Ninth Circuit held that plaintiffs were not required to seek a due process hearing under the IDEA. Here, plaintiffs specifically challenge T.S.'s identification, evaluation, and subsequent denial of a FAPE, as well as the alleged—not admitted—policies that prevented him from being evaluated and obtaining appropriate services. Because these policies are capable of being addressed by a hearing officer, and because plaintiffs' claims are intrinsically related to the individualized IEP process, *Christopher S.* is factually inapposite.

- 21 -

Moreover, because plaintiffs have "not even petitioned [DISD]"[7] to change such policies, they have "failed to show that [they] should not be required to exhaust administrative remedies before bringing suit in federal court." *Flores v. Sch. Bd. of DeSoto Par.*, 116 Fed. Appx. 504, 511-12 (5th Cir. 2004) (per curiam).

Thus although plaintiffs prevailed at two steps of the administrative process, i.e., the TEA complaint and the due process hearing, they have failed to address in these proceedings the non-IDEA claims that they now seek to assert in federal court. "IDEA allows [the court] to review the administrative proceedings, including the evidentiary due process hearing," but absent futility, the IDEA "does not provide for [the court] to act as the first hearing body" as to these unexhausted claims. *Papania-Jones*, 275 Fed. Appx. at 303 (citing 20 U.S.C. § 1415(i)(2)(C)). Plaintiffs must give the appropriate decision-maker an "appropriate opportunity to resolve their complaints prior to filing suit[.]" *Id.* at 304.

\* \* \*

Accordingly, because plaintiffs failed to exhaust administrative remedies as to each of their non-IDEA claims and failed to carry their burden of demonstrating futility or inadequacy, the court grants DISD's motion and dismisses plaintiffs' claims under § 504 of the Rehabilitation Act, the ADA, and § 1983 without prejudice. Plaintiffs' claim for

---

[7]The record demonstrates that TEA found that DISD did not always evaluate students within the required statutory timelines. *See* Ps. App. 6. But plaintiffs do not cite any point at which they challenged DISD's alleged policy of refusing to complete an FIE if parents did not consent to testing in all areas of suspected disability, or DISD's alleged pattern and practice of over-identifying African-American boys with autism.

attorney's fees under the IDEA as the prevailing party in a special education due process hearing, and DISD's appeal of the hearing officer's decision, remain to be litigated.

       **SO ORDERED**.

May 1, 2020.

                                _____

                                SIDNEY A. FITZWATER

                                SENIOR JUDGE